UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, WILDEARTH GUARDIANS, and PREDATOR DEFENSE,<br><br>Plaintiffs,<br><br>v.<br><br>USDA APHIS WILDLIFE SERVICES, U.S. FOREST SERVICE, and BUREAU OF LAND MANAGEMENT,<br><br>Defendants. | Case No. 1:20-cv-00213-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' Second Motion to Dismiss (Dkt. 18), which seeks to dismiss Plaintiff's Fourth Claim for Relief from the Amended Complaint. The motion is fully briefed and at issue. For the reasons that follow the Court will grant the motion.

## BACKGROUND

On May 7, 2020, Plaintiffs filed a complaint alleging Defendants violated NEPA by failing to sufficiently analyze the environmental impacts of their

predator control activities and operation of the Pocatello Supply Depot. Dkt. 1. Defendants filed a motion to dismiss Plaintiffs' first and fourth claims for relief. Dkt. 6. On August 3, 2020, Plaintiffs filed their first amended complaint and the Court denied Defendants' first motion to dismiss as moot. Dkt. 9, 27. Defendants now seek to dismiss the fourth claim for relief in Plaintiffs' amended complaint relating to Wildlife Services' funding and operation of the Pocatello Supply Depot. Dkt. 18.

All facts pertaining to Plaintiffs' fourth claim for relief is taken from the amended complaint. Dkt. 9. The Pocatello Supply Depot (PSD) was opened by the U.S. Government in 1940 to supply baits and poisons for predator control programs carried out by Wildlife Services.[1] Wildlife Services initially cooperated with state, county, and other entities to operate the PSD. Over the years those entities ceased their involvement with the PSD, the last being the Greater Pocatello Chamber of Commerce in 2010. In 2009, USDA's Office of General Counsel determined the PSD was a Federal entity that must comply with Federal administrative requirements. On July 1, 2014 the PSD transitioned its operations and became a fully Federalized facility operated exclusively by Wildlife Services.

---

[1] At the time, the agency that is now Wildlife Services was called the Division of Predatory Animal and Rodent Control.

**MEMORANDUM DECISION AND ORDER - 2**

The PSD manufactures and provides specialized products for wildlife damage management activities. Some of these products include a livestock protection collar containing Compound-1080, M-44 "cyanide bombs," sodium nitrate/charcoal gas cartridges, DRC-1339 poison, strychnine, zinc phosphide, among others. Of the 29 restricted use pesticides used by USDA APHIS, 20 are manufactured at the PSD. The PSD ships these products to Wildlife Services' state programs and employees, professional exterminators, universities, and private individuals, nationally and internationally.

The PSD was analyzed in a 1994 Programmatic Environmental Impact Statement (PEIS), which was reissued in 1997 with some corrections. The PEIS is the only public NEPA analysis of the PSD, and it addressed the PSD in cursory fashion.

On July 3, 2014, Wildlife Services issued a new Directive 3.115, the purpose of which was to "establish guidelines for operation of the" PSD.[2] The new Directive 3.115 replaced a previous version dated October 18, 2012. The 2014 version of Directive 3.115 sets out Wildlife Services' policy with regard to the

---

[2] The Court takes judicial notice of Directive 3.115. Available at https://www.aphis.usda.gov/wildlife_damage/directives/pdf/3.115.pdf (last accessed November 30, 2020). *See Balderas v. United Parcel Serv., Inc.*, 385 F. Supp. 3d 1090, 1095 (D. Idaho 2019).

**MEMORANDUM DECISION AND ORDER - 3**

PSD, provides some background of the PSD, and then sets standards for implementation. The Directive contains standards for: 1) Sales – that the PSD operates as an over-the-counter entity where all orders must be paid for prior to shipment, and that the PSD attains "full cost recovery;" 2) Billing and Invoicing – that the PSD shall not bill customers for orders, but ensure full payment before shipping the order; 3) Drug and Pesticide Registration – setting out guidelines for managing FIFRA registered products; and 4) Pricing – that the PSD shall review its pricing to ensure full cost recovery and publish updated price lists. No NEPA analysis was conducted when the PSD was federalized, or prior to issuance of Directive 3.115.

Wildlife Services has never considered the potential threats to the local community from the PSD's activities – including discharging byproducts from its manufacturing processes to air or water. The PSD has 4 open floor drains that discharge into the Pocatello sewer system and a 2017 audit found violations of expectations for chemical storage.

Plaintiffs allege that Wildlife Services has violated NEPA and the Administrative Procedures Act by "deciding to fund and operate the [PSD] by executing contracts, fulfilling orders, and other actions without first completing an adequate NEPA analysis or supplementing the 1994/97 PEIS…." Dkt. 9 ¶ 142.

MEMORANDUM DECISION AND ORDER - 4

Defendants argue that Plaintiffs' claim regarding the PSD should be dismissed because it is barred by the statute of limitations, fails to identify reviewable or final agency action, fails to identify "major federal action" triggering NEPA, and fails to allege facts supporting Plaintiffs standing. Dkt. 18 at 2.

## LEGAL STANDARD

### A.   Rule 12(b)(1)

A defendant's challenge to a plaintiff's standing under Rule 12(b)(1) draws into question the Court's subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Id*. As is the case here, in a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering this type of jurisdictional attack, a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Id.*; *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988). When subject matter jurisdiction is challenged, the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

### B.   Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir.2007) (citations omitted).

## ANALYSIS

### A.  Agency Action

Plaintiffs challenge Wildlife Services' operation of the PSD under NEPA. Because NEPA contains no separate provision for judicial review, compliance with NEPA is reviewed under the APA. 5 U.S.C. 706(2)(A); *NW Resource Info. Ctr.,*

*Inc. v. NMFS*, 56 F.3d 1060, 1066 (9th Cir.1995). First, the claimants must identify an "agency action." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990). "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). Such a list is "meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 478 (2001). To invoke the Court's jurisdiction under the APA a plaintiff must challenge a final agency action. Agency action is "final" when two conditions are met: (1) "the action must mark the consummation of the agency's decision-making process – it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citation omitted).

In measuring finality, the "agency's characterization of its action as being provisional or advisory is not necessarily dispositive"; instead, "courts consider whether the practical effects of an agency's decision make it a final agency action, regardless of how it is labeled." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094-95 (9th Cir. 2014). "[E]ven if the agency does not label its decision or action as final, it may be reviewable [under the APA] if it 'has the

**MEMORANDUM DECISION AND ORDER - 7**

status of law or comparable legal force' or if 'immediate compliance with its terms is expected.'" *Id*. (quoting *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006)). Therefore, the court must "focus on both the 'practical and legal effects of the agency action,' and define the finality requirement 'in a pragmatic and flexible manner.'" *Havasupai Tribe v. Provencio*, 876 F.3d 1242, 1250 (9th Cir. 2017) (quoting *Or. Nat. Desert Ass'n*, 465 F.3d at 982).

Plaintiffs advance three theories of final agency action. First, that the federalization of the PSD was final agency action. Second, that Wildlife Services' continued funding and operation of the PSD – specifically executing contracts and fulfilling orders for baits and poisons – is final agency action. And third, that Defendants' failure to prepare an EIS or supplemental EIS is final agency action.

Here, construing the facts in a light most favorable to plaintiffs, the federalization of the PSD is a final agency action. First, the Office of General Counsel determined that the PSD was a fully federalized facility in 2009. The last cooperative agreement with the Greater Pocatello Chamber of Commerce was terminated in 2010. Wildlife Services issued Directive 3.115 on July 3, 2004 stating that the PSD "transitioned its operations to become a fully Federalized facility operated exclusively by Wildlife Services" on July 1, 2014. The decision to federalize the PSD was not tentative or interlocutory in nature and the issuance of

**MEMORANDUM DECISION AND ORDER - 8**

Directive 3.115 marks the consummation of Wildlife Services' decision-making process.

Second, the decision to federalize the facility, and Directive 3.115, determined the rights and obligations of Wildlife Services, related to operating the PSD, and of individuals purchasing products from the PSD. While these obligations may have existed prior to Directive 3.115, the Directive at least provides regulatory structure for those rights and obligations. The Government describes Directive 3.115 as "guidance," but the actual terms of the Directive regarding sales, billing, pricing, and product registration are not stated as guidelines. Instead, the Directive states that the PSD and Wildlife Services "shall" take certain actions. Directive 3.115 codifies the obligations of Wildlife Service in operating the PSD. This is probably sufficient to allege final agency action *See Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163 (9th Cir. 2018). To succeed on their claim Plaintiffs must also allege that this action is a "major federal action" under NEPA, discussed below.

The Plaintiffs also allege that Wildlife Services' decision to fund and operate the PSD by executing contracts, fulfilling orders, and other actions are final agency action. Essentially Plaintiffs argue that distributing products from the PSD internally to other Wildlife Services offices, and selling products to third parties

**MEMORANDUM DECISION AND ORDER - 9**

are final agency action. Plaintiffs argue that executing contracts and fulfilling orders are akin to licenses to purchase and use the products.

There are two separate actions that need to be analyzed: (1) Wildlife Services distribution of products internally from the PSD to other Wildlife Services' offices; and (2) the PSD's sales of products to non-federal third parties.

With regard to the internal distribution of products Plaintiffs have not alleged agency action, nor final agency action. "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). These internal transfers do not meet any of the above categories. Further, these transfers do not mark the consummation of the agency's decision-making process, nor do they determine any rights or obligations. Plaintiff's real concern is with the use of the products in lands where they recreate and observe wildlife. Simply by transferring products within its own agency, Wildlife Services is not determining how, when, where, or even whether the products will be used. Nor are rights or obligations determined by these internal transfers. This is the type of quintessential day-to-day agency

operation that is not reviewable.[3]

The non-federal third-party sales pose a closer question. The Court can see how third-party sales may be akin to a license to use the products. But, Plaintiffs have not identified a particular sale or sales that they believe should be subject to NEPA. Instead, they attack Wildlife Services' general program of producing and selling these products. This is the kind of programmatic attack that was foreclosed in *Lujan.* 497 U.S. at 894; *see also Ctr. For Biological Diversity v. U.S. Dep't of Hous. & Urban Dev.*, 241 F.R.D. 495, 501 (D. Ariz. 2006).

Plaintiffs have also not alleged standing to challenge third-party sales of products from the PSD. In their first amended complaint Plaintiffs allege that their members recreate on public lands throughout Idaho, including the BLM's Twin Falls District. Dkt. 9 ¶ 17. Plaintiffs further allege they recreate on "lands

---

[3] Plaintiffs rely on *Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.*, 397 F. Supp. 2d 1241, 1253 (D. Mont. 2005) (*FSEEE*) to support their argument that the operation and funding of the PSD is final agency action. While the comparison between the products produced by the PSD and fire retardant at issue in *FSEEE* has initial appeal, this case differs from *FSEEE* in material respects. In *FSEEE*, plaintiffs were challenging the *use* of fire retardant in federal firefighting operations without a NEPA analysis. There, the court found that the decision to use fire retardant in firefighting operations was final agency action because the decision to use fire retardant had been made, and, that there was not time to prepare an EIS or EA for site-specific applications. In this case, plaintiffs are challenging the use of the baits and poisons by Wildlife Services in other claims. They are not challenging the use of the poisons and baits produced by the PSD in this claim, instead they are challenging the production and distribution of these products. Unlike *FSEEE*, Wildlife services does conduct NEPA analysis on the use of the products produced by the PSD when the agency makes the final decision to use them.

throughout Idaho and other western states" where they fear encountering products produced by the PSD. They then identify shipments of PSD products to non-federal entities in Missouri, California, Texas, Guam, Australia, and Canada. *Id.* ¶ 106. Plaintiffs allege that products from the PSD are used on public lands where they recreate, the only party they identify using these products on public lands is Wildlife Services. They allege the PSD ships its products to non-federal third parties nationally and internationally. But there is no allegation that these third parties' use of the products harm plaintiffs in any way. Nor is there any allegation that requiring NEPA analysis of – or enjoining – third-party sales would somehow remedy plaintiffs' harm. *W. Watersheds Project v. Grimm*, 921 F.3d 1141, 1146 (9th Cir. 2019)

Finally, a failure to act may be final agency action. Wildlife Services' decision not to prepare an EIS or consult NEPA can itself be a final agency action. *Hall v. Norton,* 266 F.3d 969, 975 n. 5 (9th Cir.2001). In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) (*SUWA*), the Court held a failure to act is "sometimes remediable under the APA, but not always." A claim under 5 U.S.C. § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*. *Id.* at 63. If, indeed, Wildlife Services should have conducted a NEPA analysis for the PSD, and has not done

**MEMORANDUM DECISION AND ORDER - 12**

so, Plaintiffs' claim could proceed.

### B. NEPA

NEPA requires all federal agencies to prepare an EIS for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). To show that the agency violated its duty to prepare an EIS in the Ninth Circuit, a plaintiff need not show that a significant effect will in fact occur, only that substantial questions are raised as to whether a project may have a significant effect. *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir.1998). If an agency decides not to prepare an EIS, the reviewing court must "determine whether the responsible agency has 'reasonably concluded' that the project will have no significant adverse environmental consequences." *City of Davis v. Coleman*, 521 F.2d 661, 673 (9th Cir.1975).

The PSD was opened in 1940, and was in operation at the time NEPA became effective on January 1, 1970. Since NEPA does not apply retroactively an EIS cannot be required on the basis of the PSD's construction or pre-NEPA operation. *Upper Snake River Chapter of Trout Unlimited v. Hodel*, 921 F.2d 232, 234 (9th Cir.1990). For such facilities, the agency need not prepare an EIS to evaluate the environmental effects "of mere continued operation of [the] facility."

**MEMORANDUM DECISION AND ORDER - 13**

*Id*. at 235. "However, if an ongoing project undergoes changes which themselves amount to 'major Federal actions,' the operating agency must prepare an EIS." *Id*. Under this authority, an EIS may be required where "a revision or expansion of the original facilities is contemplated." *Id*.; *Andrus v. Sierra Club*, 442 U.S. 347, 363 n. 21 (1979) (stating that "major Federal actions include the expansion or revision of ongoing programs").

In *Burbank Anti-Noise Group v. Goldschmidt*, 623 F.2d 115 (9th Cir. 1980), the Ninth Circuit held that the FAA was not required to prepare an EIS when it provided federal financial assistance to purchase an airport. This was because the airport had been in operation for years, and would continue as an airport. There, the Ninth Circuit held that "[a]n EIS is not required … when the proposed federal action will effect no change in the status quo." Likewise – and closer to home – the Ninth Circuit, in *Hodel*, held that the Bureau of Reclamation was not required to prepare an EIS for periodically adjusting the flow of water from the Palisades Dam, which had been constructed prior to the enactment of NEPA. 921 F.2d at 235-36. In *Tri-Valley CAREs v. U.S. Dept. of Energy*, 671 F.3d 1113 (9th Cir. 2012), the court relied on this line of reasoning to hold that the construction of a biosafety level-3 laboratory at the Lawrence Livermore National Laboratory would not change the status quo, and thus no EIS was required.

**MEMORANDUM DECISION AND ORDER - 14**

The problem with Plaintiffs' argument is that, despite the federalization of the PSD in 2014, they have not alleged any change in the status quo. The PSD has been in operation since 1940, albeit with state and local partners until 2010. The last partner, the Greater Pocatello Chamber of Commerce, was only involved in financial auditing before ceasing its relationship with the PSD. While the decision to federalize the PSD may be final agency action, Plaintiffs have not alleged that decision changed the day-to-day operations of the PSD. Instead, Plaintiffs' allegations suggest that the PSD continues its operations much as it had in the past.

Further, Directive 3.115 does not change the day-to-day operations of the PSD. It only sets out requirements for sales, billing, pricing, and product registration. None of these categories suggest a revision or expansion which would rise to the level of a major federal action. Therefore, Wildlife Services cannot be required to prepare a NEPA analysis on the basis of Directive 3.115 or the federalization of the PSD.

Assuming arguendo that Plaintiffs had identified final agency action with regard to sales from the PSD to third parties, they have not alleged that these sales are major federal action. The Ninth Circuit has held that the agency must have some degree of decision-making power, authority, or control before a "project" can be a major federal action. *Ka Makani 'O Kohala Ohana Inc. v. Water Supply*, 295

F.3d 955, 960 (9th Cir. 2002) (federal funding for water project, and HUD/USGS participation in project design, was not sufficient to make it major federal action).

Somewhat like the federal funding in *Water Supply*, Wildlife Services has control over whether it sells products to third-parties, but it does not have any authority or control over how those products are ultimately used. Directive 3.115 explains that products are sold only after full payment. But, customers are not required to sign contracts governing the use of PSD products. Wildlife Services has no control over how, or whether, the products sold to third parties are ultimately used. This is unlike timber sales, power supply contracts, and so many other federal actions that give the federal government some degree of control over a third party in executing a project, so that it is appropriate to require that the government consider the environmental impacts caused by the project.

Plaintiffs also argue that Wildlife Services has failed to supplement the 1994/97 PEIS. Where an action has not yet been completed, the agency has "a continuing duty to gather and evaluate new information relevant to the environmental impacts of its actions." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 559 (9th Cir.2000). In *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989), the Supreme Court cited the regulations of the Council on Environmental Quality, the regulating agency under NEPA, in holding that federal

**MEMORANDUM DECISION AND ORDER - 16**

agencies must supplement an EIS if there "are significant new circumstances or information relevant to environmental concerns and bearing on the *proposed action* or its impacts." (emphasis added). The Court noted that NEPA requires agencies to take a "hard look" "at the environmental effects of their planned action, even after a proposal has received initial approval." *Id*. at 374.

As discussed above, there are no major federal actions yet to be completed at the PSD. The major federal action occurred when the PSD was constructed and began operating in 1940. This action is now complete. Because there is no planned, or proposed, action at the PSD there is no requirement that Wildlife Services supplement its NEPA analysis.

### C.  Leave to Amend

The Court will grant Defendants' motion to dismiss with leave to amend. NEPA does not apply retroactively and Plaintiffs' cannot challenge the PSD's ongoing operations absent a major federal action that would independently require an EIS. Plaintiffs' have alleged no major federal action triggering NEPA review, nor can the decision to federalize the facility or Directive 3.115 form the basis for such claim. The distribution from the PSD to other Wildlife Services offices is not agency action. It is "clear" that Plaintiffs cannot save these claims by amendment. *Harris*, 573 F.3d at 737.

Plaintiffs have not challenged specific sales of products from the PSD and have thus failed to allege final agency action. Further, Plaintiffs have not pled standing to challenge these sales nor that these sales are major federal actions. The Court is skeptical that Plaintiffs can overcome these hurdles, but is not in a position to conclusively say that the claim cannot be saved by amendment. Therefore, the Court will grant Defendants' motion to dismiss, but with leave to amend. Any amended complaint must be filed within 30 days of this order.

## ORDER

**IT IS ORDERED** that:

1. Defendants' Second Motion to Dismiss (Dkt. 18) is **GRANTED** with leave to amend.

2. If Plaintiffs choose to file an amended complaint it must be filed within 30 days of this order.

DATED: December 11, 2020

B. Lynn Winmill
U.S. District Court Judge